UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE: MOTION TO COMPEL COMPLIANCE WITH SUBPOENA ISSUED TO:<br><br>TARGETSMART COMMUNICATIONS, LLC<br><br>**Underlying case pending in the District of Idaho:**<br><br>FEDERAL TRADE COMMISSION,<br><br>　　　Plaintiff,<br><br>　　　v.<br><br>KOCHAVA INC., corporation,<br><br>　　　Defendant. | **Misc. Action No.** _____<br><br><br><br><br><br><br><br><br><br>**Case No. 2:22-cv-00377-BLW** |

**STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL TARGETSMART COMMUNICATIONS LLC TO COMPLY WITH SUBPOENA**

## INTRODUCTION

In the underlying action in the District of Idaho, Movant Federal Trade Commission ("FTC") alleges that data broker Kochava Inc. ("Kochava") has violated Section 5 of the FTC Act, 15 U.S.C. § 45, in its collection, use, and disclosure of consumers' personal information. For much of the personal information that it uses and discloses, Kochava does not itself collect this data directly from consumers. Rather, it purchases consumers' personal information from other companies, including other data brokers.

Respondent TargetSmart Communications, LLC ("TargetSmart") is one such data broker. Indeed, according to Kochava's public-facing marketing material, TargetSmart has served as one of Kochava's "Premium Data Suppliers." As a result, where TargetSmart gets its consumer data; what consumers are told, if anything, when that data is collected; and, ultimately, whether consumers consent to the sale of their data to Kochava are all key questions in the underlying action. To obtain answers to these questions, the FTC served on TargetSmart a *subpoena duces tecum* pursuant to Federal Rule of Civil Procedure 45.

Despite the best efforts of counsel for the FTC, including offering to limit the requirements of the subpoena and to enter into a protective order with the company, TargetSmart has balked at producing documents sufficient for the FTC to understand how TargetSmart obtains the data that it has sold to Kochava. Yet, as explained below, the FTC's request complies with the standards set forth in Federal Rules of Civil Procedure 45 and 26. As a result, TargetSmart should be compelled to adequately respond to the FTC's subpoena.

## BACKGROUND

In the District of Idaho action, the FTC alleges that Kochava engages in unfair acts or practices in violation of the FTC Act in its collection, use, and disclosure of consumers' personal

information. (Declaration of Brian Shull ("Shull Decl."), attached hereto as Exhibit 1, at ¶ 3); *see also FTC v. Kochava, Inc.*, 2024 WL 449363, at *1 (D. Idaho Feb. 3, 2024). Specifically, the FTC claims that "Kochava's violations of the FTC Act are in connection with acquiring and using consumers' sensitive, identifying information and disclosing the information to third parties without consumers' knowledge or consent." (*See* Shull Decl. at ¶ 3 & Ex. A at ¶ 2). In response, Kochava argues that consumers consented to the use of their personal information by Kochava and has made consent a central part of its defense. *See, e.g., Mem. in Supp. of Mot. to Dismiss First Am. Compl. Pursuant to Fed. R. Civ. P. 12(b)(6)*, 2:22-cv-00377-BLW (D. Idaho *filed* July 5, 2023), at 3-4, attached to Shull Decl. at Ex. B; *Def. Kochava Inc.'s Answer to Pl.'s Am. Compl.*, 2:22-cv-00377-BLW (D. Idaho *filed* Feb. 20, 2024), at ¶¶ 12, 16, 20, 22, 58, 59, 78, 83, 88, 90, First Affirmative Defense, Second Affirmative Defense, Eleventh Affirmative Defense, attached to Shull Decl. at Ex. C.

Because the consent of consumers is a central aspect of both the FTC's claim and Kochava's defense, the FTC must discover the source of information that "Premium Data Suppliers" like TargetSmart provided to Kochava. (*See* Declaration of Joseph Swindal ("Swindal Decl."), attached hereto as Exhibit 2, at ¶ 5 & Attach. B.) Accordingly, the FTC served a *subpoena duces tecum* on TargetSmart on January 30, 2024, in accordance with Federal Rule of Civil Procedure 45. (*See* Shull Decl. at ¶ 6 & Ex. D.) Through the subpoena, the FTC seeks documents relating to whether consumers whose data was supplied to Kochava by TargetSmart consented to, among other things: the transfer of their personal information to Kochava, the use of this data by Kochava, and its downstream disclosure to third parties by Kochava.

Although TargetSmart has agreed to produce some documents in response to certain of the subpoena requests, it has balked at producing any documents in response to Subpoena

2

Request 6, which states:

> 6. For each category of Consumer Information transferred, licensed, or sold to Kochava by TargetSmart, documents sufficient to identify:
>
>    a. Each source from which TargetSmart obtained each category of Consumer Information;
>
>    b. The dates during which TargetSmart obtained each category of Consumer Information from each source;
>
>    c. The quantity of each category of Consumer Information TargetSmart obtained from each source;
>
>    d. The format or file type of the data transferred, licensed, or sold;
>
>    e. Any modifications of, edits to, recombination of, or other alterations of the data prior to its transfer, licensing, or sale to Kochava;
>
>    f. The notice(s), if any, provided to consumers in connection with the collection of each category of Consumer Information;
>
>    g. The terms upon which TargetSmart obtained each category of Consumer Information, including, but not limited to, any privacy or data security requirements, restrictions, or protections;
>
>    h. Consent provided by consumers for the transfer, license, sale, or use of each category of Consumer Information;
>
>    i. How TargetSmart keeps records of such consent, including documents sufficient to identify the file type and database where these records are stored; and
>
>    j. Any instance in which a consumer opted out, or otherwise withdrew consent, to the transfer, license, sale, use, or collection of their Consumer Information and whether such opt-out was communicated to Kochava.

(Shull Decl. at ¶ 8 & Ex. D at Request 6.) TargetSmart's refusal to comply with this fundamental and appropriate request has forced the FTC to file the instant motion.

## LEGAL STANDARD

"When deciding a motion to compel, a court must consider first whether the discovery sought is relevant. Discovery obtained from a nonparty pursuant to Rule 45 has 'the same scope as provided in Rule 26(b), thus promoting uniformity.'" *In re Denture Cream Prod. Liab. Litig.*, 292 F.R.D. 120, 123 (D.D.C. 2013) (quoting Advisory Committee Note to 1946 Amendment to Rule 45(d)). As such, a party may obtain from a nonparty "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed R. Civ.

3

P. 26(b).

Once relevance is established, the court then turns to any objections to compliance with the subpoena raised by the subpoena recipient, such as undue burden, privilege, or confidentiality. *See, e.g., Buzzfeed, Inc. v. U.S. Dept. of Just.*, 318 F. Supp. 3d 347, 356 (D.D.C. 2018). However, "[t]he burden lies on the party resisting discovery to show that the documents requested are either unduly burdensome or privileged." *Id*. (quoting *In re Micron Tech., Inc. Sec. Litig.*, 264 F.R.D. 7, 9 (D.D.C. 2010)).

**ARGUMENT**

**I.      THE REQUESTED DOCUMENTS ARE RELEVANT TO THE UNDERLYING ACTION**

There can be no question that Subpoena Request 6 overcomes the initial obstacle to enforcement – it requests documents that are clearly relevant to both the FTC's unfairness claim and Kochava's purported defenses. Specifically, the FTC alleges that Kochava engaged in an unfair practice in its collection, use, and disclosure of consumers' personal information. *Kochava*, 2024 WL 449363, at *1. A practice is unfair under Section 5 of the FTC Act if it 1) causes or is likely to cause substantial injury, 2) that consumers themselves cannot reasonably avoid, and 3) is not outweighed by countervailing benefits to consumers or competition. *See Am. Fin. Serv. Ass'n v. FTC*, 767 F.2d 957, 971 (D.C. Cir. 1985).

Whether consumers gave informed consent to the use of their personal information is directly tied to the second unfairness factor – whether consumers could reasonably avoid the substantial injury. "In determining whether consumers' injuries were reasonably avoidable, courts look to whether the consumers had a free and informed choice." *FTC v. Neovi, Inc.*, 604 F.3d 1150, 1158 (9th Cir. 2010). If consumers did not consent—if, in fact, consumers did not even know their data was being collected by Kochava, as the FTC alleges—then consumers

4

could not have made a "free and informed choice," and there could be no reasonable avoidance. *See FTC v. Kochava Inc.*, 671 F. Supp. 3d 1161, 1176 (D. Idaho 2023) (holding that at the motion to dismiss stage, the FTC had adequately pled that "consumers lack the information necessary to make informed choices…."). Understanding how the data that was sold to Kochava was collected, what consumers were told when the data was collected, and whether consent was obtained from the consumers are all necessary questions to determine whether consumers had a free and informed choice. Moreover, because Kochava has also alleged that consumers consented to the collection and use of their data in its Answer, consumers' consent (or lack thereof) will be central to the FTC's responses to Kochava's defenses.

In short, the FTC's need for the information in Subpoena Request 6 easily meets the standard for discovery – there is a very real "possibility that the information sought may be relevant to the claim or defense of any party." *In re Non-Party Subpoena to Ctr. for Study of Soc. Pol'y*, 659 F. Supp. 3d 54, 59 (D.D.C. 2023) (quotation omitted).

**II.     THERE IS NO UNDUE BURDEN ON TARGETSMART AND ANY CONFIDENTIALITY CONCERNS MAY BE ADDRESSED THROUGH A PROTECTIVE ORDER**

Once relevance has been established, a court must next "assess any objections to the subpoena under the standards supplied by Rule 45." *BuzzFeed*, 318 F. Supp. 3d at 356. In its discussions with counsel for TargetSmart, the FTC understands that TargetSmart objects to Subpoena Request 6 because of purported undue burden and confidentiality concerns. (Shull Decl. at ¶¶ 7-11, Exs. E, G.) It is TargetSmart's burden, as the "party resisting discovery," to support these objections. *See BuzzFeed*, 318 F. Supp. 3d at 356 (quotation omitted). It will, however, be unable to do so.

  a. There is no undue burden on TargetSmart

TargetSmart cannot demonstrate that Subpoena Request 6 causes it any undue burden. In

considering burden, district courts consider: "1) whether the discovery is unreasonably cumulative or duplicative; 2) whether the discovery sought can be obtained from some other source that is more convenient, less burdensome, or less expensive; and 3) . . . whether the burden or expense of the proposed discovery outweighs its likely benefit." *In re: Non-Party Subpoena*, 659 F. Supp. 3d at 58-59 (quotation omitted). Each of these factors weighs in favor of enforcing the subpoena.

First, the discovery is not unreasonably cumulative or duplicative. As one of Kochava's "premium data suppliers," TargetSmart is a unique repository of information about where, when, and how the data that TargetSmart sold to Kochava was collected. Moreover, the FTC is unaware of a different source for this information. In its privacy policy, TargetSmart only vaguely refers to, among others, "Advertising Partners," "Data brokers," and "Marketing companies" as its sources. (Swindal Decl. at ¶ 4 & Attach. A.) But it does not identify who these third-party sources are, how these third parties collect consumers' data, or how or even if consumers consent to this collection. Indeed, the lack of this information is precisely why the subpoena to TargetSmart is necessary. Furthermore, as discussed below, TargetSmart claims this information is confidential and a trade secret, thus purportedly not widely known. To the FTC's knowledge, there is therefore no other more convenient, less burdensome, or less expensive means to obtain the information the FTC needs. And, in its discussions with TargetSmart, the company has not pointed to any other source.

The final factor in a court's undue burden analysis is whether the burden of responding to the discovery outweighs the likely benefit. Here, the burden is low on TargetSmart. The FTC's subpoena is narrowly tailored, asking only for "documents sufficient to show" the requested information. *C.f., e.g., Juniper Networks, Inc. v. Bahattab,* 2009 WL 10696661, at *2-4 (D.D.C.

6

Mar. 3, 2009) (rejecting the imposition of a more limited "sufficient to show" standard on a set of requests seeking "all documents," in favor of Rule 26's "liberal" discovery standard). Moreover, during meet-and-confers, the FTC offered to further reduce any purported burden by allowing TargetSmart to produce contracts with its suppliers to fulfill the requirements of Subpoena Request 6. (Shull Decl. at ¶ 9.)[1] These contracts presumably would be readily accessible to TargetSmart as a matter of regular business practice. Other than general claims of "difficulty" in tracing documents, TargetSmart has not provided any specific evidence that complying with Subpoena Request 6 would be unduly burdensome. *See Fairholme Funds, Inc. v. FHFA*, 2019 WL 5864595, at *2 (D.D.C. Nov. 8, 2019) ("Vague and conclusory assertions are not sufficient; rather, a showing of undue burden must be specific and concrete.") (quotation omitted).

While the burden to TargetSmart would be low, the countervailing benefit of this information to the FTC is high. The FTC could determine when and how this information was originally collected and what consent, if any, consumers gave to the collection, use, and disclosure of that data. As explained above, this question of consumer consent is central to both the FTC's allegations and to Kochava's asserted defenses.

### b. Any confidentiality concerns may be addressed through a protective order

Although TargetSmart claims undue burden, its primary objection

---

[1] This offer is contingent on the FTC's understanding that TargetSmart did not gather information itself directly from consumers. To the extent that understanding is incorrect and TargetSmart did interact directly with consumers, the FTC would need to obtain documents sufficient to show what was told to consumers when their data was collected and how consumers consented to the collection, use, and disclosure of their personal information.

7

appears to be a desire to keep the identity of its data suppliers confidential.[2] (Shull Decl. at ¶ 10). To be sure, Rule 45 provides protections for trade secrets or confidential information requested by a subpoena, including providing courts with power to quash the subpoena. Fed. R. Civ. P. 45(d)(3)(B). However, "there is no absolute privilege for trade secrets and similar confidential information." *Festus & Helen Stacy Found., Inc. v. Merrill Lynch, Pierce Fenner, & Smith Inc.*, 432 F. Supp. 2d 1375, 1380 (N.D. Ga. 2006) (quotation omitted). Instead, "courts weigh the claim to privacy against the need for disclosure, and commonly enter a protective order restricting disclosure." *Id*. Indeed, "[t]he quashing of a subpoena is an extraordinary measure…. A court should be loath to quash a subpoena if other protection of less absolute character is possible." *U.S. Dept. of Treas. v. Pen. Benefit Guart'y Corp.*, 301 F.R.D. 20, 25 (D.D.C. 2014) (quotation omitted); *see also In re Shelton Fed. Grp., LLC*, 2018 WL 4482560, at *4 (Bankr. D.D.C. Aug. 21, 2018) (refusing to quash subpoena when entity "has not shown why quashing the subpoena is necessary over the less drastic measure of a protective order"). Moreover, courts assign less risk to the disclosure of purportedly confidential or trade secret information where the requestor is, as the FTC is here, a "non-competitor." *See, e.g., In re Kincaid,* 2023 WL 5933341, at *8 (D.D.C. Aug. 9, 2023).

In the underlying matter, the District of Idaho has already entered a protective order that, among other things, provides confidentiality protections to documents produced by third parties (the "Protective Order," attached to Shull Decl. at Ex. F). In fact, the Protective Order does not distinguish between the confidentiality protections afforded to parties and those afforded to non-

---

[2] As the party resisting discovery, it is TargetSmart's burden to show that the requested documents constitute confidential or trade secrets. *Mylan Inc. v. Analysis Group, Inc.*, 2018 WL 4063496, at *2 (D. Kan. Aug. 27, 2018). TargetSmart has not clearly demonstrated to the FTC that it will be able to meet this burden.

parties like TargetSmart. For example, among other protections, materials designated as "confidential," whether by a party or a non-party, may only be disclosed to a specific, enumerated set of persons set forth in the Order. (Protective Order § VI.A.) Protected material must be stored and maintained in a secure manner that limits access to the persons authorized under the Order. (*Id*.) Any party or non-party must file protected material under seal on the public docket, and for a defined category of particularly sensitive personal information, no party or non-party may disclose any such information without prior approval of the Court. (Protective Order §§ IX – X.) And any witnesses to whom confidential information is disclosed must sign an agreement to be bound by the terms of the Order. (Protective Order § VI.B.)

Despite the strong protections already offered to TargetSmart by the Protective Order, during meet-and-confers, the FTC offered to further stipulate to an additional protective order specific to TargetSmart that would offer further protections, such as limiting disclosure of any documents designated by TargetSmart to counsel of record in the underlying action. (Shull Decl. at ¶ 10); *see also Shelton*, 2018 WL 4482560, at *4 ("Another option is to allow the trustee's counsel to review the documents, but not provide the trustee copies."). TargetSmart refused this offer, but failed to provide any legitimate reason why such a less drastic measure did not adequately protect the company's interests. (Shull Decl. at ¶ 11 & Ex. G.)

Because the protective order already entered by the District of Idaho in the underlying action or, if necessary, an additional protective order between the FTC and TargetSmart, sufficiently protects any confidentiality interest TargetSmart may have in documents responsive to Subpoena Request 6, the Court should compel TargetSmart to comply with that request.

## CONCLUSION

For the foregoing reasons, the FTC respectfully requests that the Court compel

9

TargetSmart to produce documents responsive to Subpoena Request 6.

                              Respectfully submitted,

Dated: April 16, 2024            /s Julia A. Horwitz

                              BRIAN SHULL, IL Bar No. 6293797
                              JULIA A. HORWITZ, DC Bar No. 1018561
                              Federal Trade Commission
                              600 Pennsylvania Avenue, N.W.
                              Washington, D.C. 20580
                              Phone: (202) 326-3734 (Shull)
                                        (202) 326-2269 (Horwitz)
                              Fax: (202) 326-3062
                              bshull@ftc.gov
                              jhorwitz@ftc.gov

                              ELIZABETH C. SCOTT, IL Bar No. 6278075
                              Federal Trade Commission
                              230 S. Dearborn St., Ste. 3030
                              Chicago, IL 60604
                              Phone: (312) 960-5609
                              Fax: (312) 960-5600
                              escott@ftc.gov